## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Martina Aguilar Aragon, Jose Leobardo Anaya Renteria, Nestor Carrera Osorio, Serfi Elezar Morales Lima, Octavio Gallardo Gutierrez, Susana Garcia Gonzales, Manuel Gutierrez Carrera, Rigoberta Olivar Roldan, Arturo Munoz Flores, Araceli Orozco Calvillo, Alfonso Renteria Ortega, and Isael Romero Bruno,<br><br>                         Plaintiffs,<br><br>vs.<br><br>Che Ku, Leng Ku, in their individual and official capacities, Star Ocean Food, Inc., Sun Foods, Inc., Sun Foods II, Inc., Double Dragon Foods, Inc.**,** Dragon Star Supermarket, Inc., Dragon Star Oriental Foods, Inc.<br><br>                         Defendants, | Case: 16-cv-03907<br>WMW-KMM<br><br><br>**AMENDED<br>COMPLAINT<br>FOR DAMAGES**<br><br>**(JURY TRIAL DEMANDED)<br>UNDER FED. R. CIV. P. 38(B)** |

Martina Aguilar Aragon, Jose Leobardo Anaya Renteria, Nestor Carrera Osorio, Serfi

Elezar Morales Lima, Octavio Gallardo Gutierrez, Susana Garcia Gonzales, Manuel Gutierrez

Carrera, Rigoberta Olivar Roldan, Arturo Munoz Flores, Araceli Orozco Calvillo, Alfonso

Renteria Ortega ("Plaintiffs"), as and for their  Complaint against Che Ku, Leng Ku, in their

individual and official capacities, Star Ocean Food, Inc., Sun Foods, Inc., Sun Foods II, Inc.,

Double Dragon Foods, Inc., Dragon Star Supermarket, Inc., Dragon Star Oriental Foods, Inc.

("Defendants") states as follows:

## INTRODUCTION

1.    The Plaintiffs are bringing an employment discrimination case based on race pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), as amended by the Civil Rights Act of 1991. The Plaintiffsbring claims against the Defendants arising under28 U.S.C. § 1350, the Alien Tort Statute ("ATS"). Additionally, the Plaintiffs are bringing claims against the Defendants pursuant to 18 U.S.C. §§ 1589 and 1595 for the Defendants' violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Finally the Plaintiffs are bringing claims against the Defendants pursuant to 18 U.S.C.A § 1964(c), The Rackateer Influenced and Corrupt Organizations Statute ("RICO").

2.    Each and every named Plaintiff alleges that the Defendants have jointly and severally engaged in, and continue to engage in, a pattern and practice of employment discrimination, on the basis of race, national origin and ethnicity of Latino individuals. Each of the named Defendants discriminated against Latino employees in, hiring, promotion, transfer, job assignment, and terms and conditions of job duties as specifically alleged by each named Plaintiff in the Complaint. As such, the Defendant's intentionally deprived the above-named Latinos of the same rights that are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants. Moreover, by consistently not paying their employees for overtime and other hours worked, denying access to breaks and medical attention, and securing the Plaintiff's continued employment through threats and physical restraint the Plaintiffs' all have claims for the Defendants' violation of international laws prohibiting forced labor under the Alien Tort Statute. This forced labor extracted from the Plaintiffs by the Defendants also amounts to a violation of the TVPRA. Additionally, the Defendants' are an enterprise engaged in a pattern of conduct of

racketeering activity including forced labor in violation of 18 U.S.C. §§ 1589 and witness tampering in violation of 18 U.S.C. § 1512(d)(1), as well as other illegal activities covered by the act.  Plaintiffs seek declaratory and equitable monetary relief from these practices; treble compensatory damages, punitive damages; equitable remedies of accounting; and an award of costs, expenses, and attorneys' fees.

## JURISDICTION AND VENUE

3.     Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331 and 1343 to address Plaintiff's claims based on their rights conferred by federal statutes, namely 42 U.S.C. § 1981 and 28 U.S.C. § 1350, 18 U.S.C. §§ 1589 and 1595, and  18 U.S.C.A § 1964(c).

4.     The events and omissions giving rise to this action substantially occurred within this district making venue appropriate under 28 U.S.C §§ 1391.

## THE PARTIES

**Plaintiffs**

5.     Plaintiff, Martina Aguilar Aragon, ("Martina" or "Plaintiff 1") is an individual residing in Minnesota. She is a Latina woman born in Mexico. Plaintiff was initially an employee of Double Dragon from 2004 until 2006 before switching to Sun Foods I from 2006 until October of 2013. In the scope of her employment with these companies, Martina also did work at Sun Foods II, Dragon Star, and Star Ocean. At the time, she left Sun Foods I in October 2013, Martina was a manager.  During her employ with the aforementioned companies, Martina was subject to discriminatory terms and conditions of employment because she was Latina by the companies and their agents.   In the scope of her employment, Martina was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until she left her job in October 2013.

3

6.      Plaintiff, Jose Leobardo Anaya Renteria, ("Jose" or "Plaintiff 2"), is an individual residing in Minnesota. He is a Latino man who was born in Mexico. Jose began working at Dragon Star in 2001 and then continued to work at Sun Foods I until the summer of 2016. During his employ with Sun foods he periodically worked at other stores owned by Leng Ku and Che Ku as needed over his 15 years of employ. During his employ with the aforementioned companies, Jose was subject to discriminatory terms and conditions of employment because he was Latino by the companies and their agents.  In the scope of his employment, Jose was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until he left his job at Sun Foods I in the summer of 2016.

7.      Plaintiff, Nestor Carrera Osorio ("Nestor" or "Plaintiff 3"), is an individual residing in Minnesota. He is a Latino man who was born in Mexico. Nestor started working at Sun Foods I in 2011 until he quit in April of 2015. During his employ, Nestor ostensibly worked in the produce department but, in practice, worked in a variety of other departments and stores as requested by management. During his employ with the aforementioned company, Nestor was subject to discriminatory terms and conditions of employment because he was Latino by the company and its agents.  In the scope of his employment, Nestor was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until he left his job in April of 2015.

8.      Plaintiff, Serfi Elezar Morales Lima ("Serfi" or "Plaintiff 4"), is an individual residing in Minnesota. He is a Latino man born in Guatemala.  From 2011 to August of 2016 Serfi worked at Sun Foods I. Serfi additionally worked at Dragon Star from 2014 until August of 2016. During his employ with the aforementioned companies, Serfi was subject to discriminatory terms and conditions of employment because he was Latino by the companies and their agents.

4

In the scope of his employment, Serfi was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until he left his job in August of 2016.

9.      Plaintiff, Octavio Gallardo Gutierrez ("Octavio" or "Plaintiff 5"), is an individual residing in Minnesota. He is a Latino man who was born in Mexico. Octavio began working for Defendant Dragon Star on or about July of 2011 as a stocker. In 2012, during the course and scope of his employment with Dragon Star, Octavio was forced to do construction and landscaping work on Che Ku's personal residential home in Eagan, Minnesota. On or about 2013, Octavio began working at Sun Foods II. Throughout his employ with the previously referenced companies Octavio did periodic work at Ocean Star, Sun Foods I and Star Ocean as well.   During his employ with the aforementioned companies, Octavio was subject to discriminatory terms and conditions of employment because he was Latino by the companies and their agents.  In the scope of his employment, Octavio was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until he left his job at Sun Foods II in 2016.

10.     Plaintiff, Susana Garcia Gonzales ("Susana" or "Plaintiff 6"), is an individual residing in Minnesota. She is a Latina woman who was born in Mexico.  Susana began working at Sun Foods I on or about September 20, 2007 as a stocker and quit in the summer of 2016. During her employ with the aforementioned companies, Susana was subject to discriminatory terms and conditions of employment because she was Latina by the company and its agents.  In the scope of her employment, Susana was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until she left her job in the summer of 2016.

11.     Plaintiff, Manuel Gutierrez Carrera ("Manuel" or "Plaintiff 7"), is an individual residing in Minnesota. He is a Latino man born in Mexico. Manuel began working for Star

Ocean in the produce department in 2004 for six months. In 2004, Manuel started working as a driver for all the Defendants' grocery stores. In 2007, Manuel began doing maintenance for all the Defendant's grocery stores. As such, Manuel worked at each grocery store owned by all the Defendants until the present time.

12.     Plaintiff, Rigoberta Olivar Roldan ("Rigoberta" "Plaintiff 8"), is an individual residing in Minnesota. She is a Latina woman born in Mexico. Rigoberta began working at Sun Foods I in 2008 in the produce department. Rigoberta worked consistently at Sun Foods I before transferring to Dragon Star in September of 2014. Rigoberta remains at Dragon Star to the present time. During her employ with the aforementioned companies, Rigoberta was subject to discriminatory terms and conditions of employment because she was Latina by the company and its agents. In the scope of her employment, Rigoberta was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until the present time.

13.     Plaintiff, Arturo Munoz Flores, ("Arturo" or "Plaintiff 9") is an individual residing in Minnesota. He is a Latino male who was born in Mexico. Arturo began working for Dragon Star in 1998 which was owned by Che Ku at the time. Arturo remained consistently employed by the Defendants doing maintenance at Double Dragon, Star Ocean, Sun Foods I, Sun Foods II and Dragon Star until September of 2015. During his employ with the aforementioned companies, Arturo was subject to discriminatory terms and conditions of employment because he was Latino by the companies and their agents. In the scope of his employment, Arturo was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until he left his job in September of 2015. Arturo has worked at Double Dragon which was given to Che Ku's wife during their divorce since September of 2015; he does

not allege he was discriminated against at Double Dragon after Che Ku's wife gained ownership of the store on or about 2015.

14.     Plaintiff, Araceli Orozco Calvillo ("Araceli" or "Plaintiff 10") an, is an individual residing in Minnesota. She is a Latina female who was born in Mexico. Araceli began working for defendants in 2009 in the Produce Department of Sun Foods I until she quit in October of 2013. During her employ with the aforementioned company, Araceli was subject to discriminatory terms and conditions of employment because she was Latina by the company and its agents.  In the scope of her employment, Araceli was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until she left her job in October of 2013.

15.     Plaintiff, Alfonso Renteria Ortega ("Alfonso" or "Plaintiff 11"), is an individual residing in Minnesota. He is a Latino male born in Mexico. Alfonso began working at Sun Foods I in 2009 in the Fish Department until he left his position at the end of 2015.  During his employ with the aforementioned company, Alfonso was subject to discriminatory terms and conditions of employment because he was Latino by the company and its agents.  In the scope of his employment, Alfonso was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until he left his job in April of 2015.

16.     Plaintiff, Isael Romero Bruno ("Isael" "Plaintiff 12"), is an individual residing in Minnesota. He is a Latino male born in Mexico. Isael worked as a Stocker at Sun Foods I and Dragon Star I for approximately five years before transferring to Sun Foods II in 2012 and continuing to work at Dragon Star for a another year after the transfer to Sun Foods II.  Isael also worked at Double Dragon following his 2012 transfer.  Isael continued to work at Sun Foods II until 2014. In the scope of his employment, Isael was subject to discriminatory terms and conditions of employment by both Che Ku and Leng Ku until he left his job.

**Defendants**

17.    Defendant, Che Ku, ("Che") is the Chief Executive Officer of several Asian food distribution companies operating grocery stores in the Twin Cities metropolitan area including, Dragon Star Supermarket Inc., Double Dragon Foods, Inc., Dragon Star Oriental Foods, Inc., Double Dragon Building, Inc., and Star Ocean Food, Inc.,. In addition to being the Chief Executive Officer of these companies, Che is directly involved with the daily operations of these companies. Che is also involved in the daily operations of Sun Foods, Inc., and Sun Foods II, Inc. though the Chief Executive Officer of these companies is, Leng Ku, Che's brother. Much of the specific conduct complained of by the Plaintiffs at the multiple storefronts operated by Leng Ku and Che Ku is directly attributable to Che Ku himself.

18.    Defendant, Leng Ku ("Leng"), is the Chief Executive Officer of two Asian food distribution companies operating Asian grocery stores in the Twin Cities Metropolitan Area, Sun Foods, Inc., and Sun Foods II, Inc. Leng is directly involved with the daily operations of these two companies and is also directly involved with the daily operations of Dragon Star Supermarket Inc., Double Dragon Foods, Inc., Dragon Star Oriental Foods, Inc., Double Dragon Building, Inc., and Star Ocean Food, Inc., thought the C.E.O. of these companies is his brother, Defendant Che Ku.

19.    Defendant, Star Ocean Food, Inc., ("Star Ocean") is a domestic business corporation incorporated in Minnesota pursuant to MN. STAT. § 302A on May 18, 1998.  Star Ocean is an active business in good standing. The business operates an Asian Foods grocery store called Star Ocean located at 1211 W. Pierce Butler Route, St. Paul, MN 55104. The Chief Executive Officer of the business is Che Ku and the principal Executive Office address for the business is located at 955 Minnehaha Ave. W. St. Paul, MN 55104. Both Leng Ku and Che Ku

are involved with the operation of the Star Ocean grocery store. Some of the unlawful conduct which the Plaintiffs' allege in the below complaint occurred at the Star Ocean Store and were exacted by Star Ocean Foods, Inc. or its agents.

20.     Defendant, Sun Foods, Inc., ("Sun Foods") is a domestic business corporation incorporated in Minnesota pursuant to MN. STAT. § 302A on October 20, 2005. Sun Foods is an active business in good standing.  The business operates an Asian foods grocery store called Sun Foods ("Sun Food I") located at 6350 Brooklyn Blvd. Brooklyn Center, MN 55429. The Chief Executive Officer of the business is Leng Ku and the executive office for the business is located at 6350 Brooklyn Blvd. Brooklyn Center, MN 55429. Both Leng Ku and Che Ku are involved with the daily operation of the Sun Foods I. Some of the unlawful conduct which the Plaintiffs' allege in the below complaint occurred at the Sun Foods I and were exacted by Sun Foods Inc., or its agents.

21.     Defendant, Sun Foods II, Inc., is a domestic business corporation incorporated in Minnesota pursuant to MN. STAT. § 302A on January 12, 2009.  Sun Foods II is an active business in good standing.  The business operates an Asian foods grocery store called Sun Foods ("Sun Foods II") which is located at 544 University Ave. W. St. Paul, MN, 55103. The Chief Executive Officer of the business is Leng Ku and the executive office for the business is located at 554 University Ave. St. Paul, MN 55103 Both Leng Ku and Che Ku are involved with the operation of the Sun Foods II. Some of the unlawful conduct which the Plaintiffs' allege in the below complaint occurred at the Sun Foods II and was exacted by Sun Foods II, Inc., or its agents.

22.     Defendant, Double Dragon Foods, Inc., ("Double Dragon") is a domestic business corporation incorporated in Minnesota pursuant to MN. STAT. § 302A on June 11, 2001. The

business is active and in good standing. The business operates an Asian Foods Grocery Store called "Double Dragon Foods" located at 121 Maryland Ave. W. St. Paul, MN 55117.  The chief executive officer of Double Dragon is Che Ku and the Principal Executive office address for the company is located at 955 W. Minnehaha Ave. St. Paul, MN 55112. Both Leng Ku and Che Ku are involved with the operation of Double Dragon Foods. Some of the unlawful conduct which the Plaintiffs' allege in the below complaint occurred at Double Dragon Foods and was exacted by Double Dragon or its agents.

23.      Defendant, Dragon Star Supermarket, Inc.("Dragon Star Supermarket") is a domestic business corporation incorporated in Minnesota pursuant to MN. STAT. § 302A on September 25, 2013. The business is active and in good standing. The business operates an Asian Foods Grocery Store called Dragon Star Supermarket located at 8020 Brooklyn Blvd. Brooklyn Park, MN 55445. The Chief Executive Officer of the Dragon Star Supermarket is Che Ku. The chief Executive Office for Dragon Star Supermarket is 8020 Brooklyn Blvd Brooklyn Park, MN 55445.  Both Leng Ku and Che Ku are involved with the operation of the Double Dragon Supermarket grocery store. Some of the unlawful conduct which the Plaintiffs' allege in the below complaint occurred at the Double Dragon Supermarket Store and was exacted by Double Dragon or its agents.

24.      Defendant, Dragon Star Oriental Foods, Inc. ("Dragon Star") is a domestic business corporation incorporated in Minnesota pursuant to MN. STAT. § 302A on December 2, 1993. The business is active and in good standing.  Dragon Star operates an Asian Foods Grocery Store located at 633 Minnehaha Ave. St. Paul, MN 55104 which is called Dragon Star Oriental Foods, Inc. The Chief Executive Officer of Dragon Star is Che Ku. The chief executive office of Dragon Star is located at 955 Minnehaha Ave. W. St. Paul, MN 55104.  Both Leng Ku

and Che Ku are involved with the operation of the Dragon Star grocery store. Some of the unlawful conduct which the Plaintiffs' allege in the below complaint occurred at the Dragon Star Store and was exacted by Dragon Star or its agents.

## GENERAL FACTS ALLEGED BY ALL PLAINTIFFS

25.     Defendants Leng Ku and Che Ku as well as their agents worked together to operate all above-captioned Defendant corporations in a manner that was deliberately discriminatory to Latino employees, in violation of international law.

26.      Defendants Leng Ku and Che Ku, individually, and as agents of the above captioned Defendant Corporations engaged in a pattern and practice of discriminatory behavior toward Latino employees of their organizations. The Defendants moreover persistently engaged in conduct which either implicitly or explicitly threatened the Plaintiffs as well as other Latino employees with deportation , if they failed to cooperate with the Defendants. The Defendants also engaged in conduct which convinced the Plaintiffs that they had no legal recourse of employment violations and that they would not be able to find other work if they were to leave the Defendant's employ.  These explicit and implicit threats allowed the Defendants to extract uncompensated labor from the Plaintiffs during virtually every pay period during the course of their respective employments and prevented the Plaintiffs from leaving their employ for many years out of fear.

27.     During the employ of all above captioned Plaintiffs, the Defendants singled out Latino employees in a multitude of ways that were different than the treatment of Non-Latino employees thereby depriving them of same rights to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship.

28.     During their employ, Plaintiffs were subject to a pattern and practice of disparate treatment as well as forced labor in violation of international law by the individual Defendants as well as The Defendant Corporations and their agents based on the fact that they are Latino. This disparate and illegal treatment included but was not limited to: a) verbal insults and threats, including threats of deportation; b) physical assaults; c) sexual harassment; d) assignment to less desirable positions within the company; e) Frequent assignment of tasks outside of normal job descriptions including dangerous tasks; f) Failure to promote and increase pay; g) Failure to pay overtime wages; h) persistent failure to pay for all hours worked; i) forcing employees to remain at work, including locking them  into their workplace; j) refusing to permit breaks during the day and time off of work; k) forced involvement in potentially illegal activities; l) persistent effort to evade worker's compensation claims and prevent employees from collecting workers compensation for their injuries; and m) repeatedly trying to prevent employees from talking to Department of Labor officials regarding employment conditions during official Department of Labor investigations. The discriminatory and egregious conduct of defendants occurred during each Plaintiff's course and scope of employments including specifically, following November of 2012 except when pled otherwise.

## FACTS SPECIFIC TO EACH PLAINTIFF

### Martina Aguilar Aragon, ("Plaintiff 1")

29.     Plaintiff 1 re-alleges all General Facts alleged in Paragraphs 25-28 as if stated below and also adds the following facts specific to her as evidence of the Defendant's disparate treatment of Latino employees and violations of international law.

30.     During the course of her employment as described in paragraph 5, Plaintiff 1 was frequently insulted by her employers, most often Leng Ku, and was told she was "useless" that

she "didn't know how" to do her work and that she was "stupid." Plaintiff 1 observed similar insults being directed by her employers at other Latino workers but did not witness similar insults directed at non-Latino employees.

31.     During her employment at Double Dragon in 2004 and also at Sun Foods I from 2006 until she left in October of 2013, Plaintiff 1 frequently observed that Latina female employees being touched inappropriately by Che Ku on the lower back and butt. She herself was inappropriately touched by Che Ku and never observed him inappropriately touching any of the non-Latino workers.

32.     During Plaintiff 1's employ, she worked as a manager and was in charge of payroll for a period of time. Plaintiff 1 was persistently told by Che Ku, Leng Ku, and another manager "Bao" to cut Latino workers' hours.  Plaintiff 1 was not similarly instructed to cut the hours on non-Latino employees.

33.     When she was in charge of payroll, Plaintiff 1 routinely noticed that Latino employees were not being paid for all the hours they were working. Plaintiff 1 brought this discrepancy to upper management's attention, specifically "Bao" and was told that "that's not important," and that Plaintiff 1 "had to accept" the situation. Plaintiff 1 also noticed that she herself was not being paid for hours she had worked. Plaintiff 1 was subsequently removed from Payroll and replaced by a sister of Bao in August of 2013. Plaintiff 1 never observed any non-Latino workers being cheated out of overtime or hours worked.

34.     During the years that Plaintiff 1 worked for  Double Dragon and Sun Foods I she was locked into a store owned by Che Ku or Leng Ku on 4 or 5 occasions On the last such occasion, on or about 2012, Plaintiff was locked into Dragon Star by Che Ku until 2 or 3 o'clock

in the morning.   Plaintiff 1 was locked into the store with other Latino employees and never observed a non-Latino employee being locked in.

35.     In October of 2013, while working at Sun Foods I, Plaintiff 1 was told by her superiors that she needed to make the Mexican workers work much faster because everything was empty. Plaintiff 1 tried to assign a non-Latino worker, Maya, to assist the Latinos who were already working as fast as they could. Maya complained to Che about the work assignment. Che told Maya not to worry, that she could take her time, and that Plaintiff 1could not push her to work. Plaintiff 1 confronted Che and Leng and complained about the disparate treatment of Latino workers.  Che then yelled at her and told her she must make the Latino workers work harder, and said that if Plaintiff 1 didn't follow what he said he didn't need her any more. The confrontation occurred in front of customers and employees and Plaintiff 1 was so embarrassed and distressed that she cried. She walked out of the store and never came back to work.

36.     As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 1 has suffered severe emotional distress and substantial damages.

**Jose Leobardo Anaya Renteria, ("Plaintiff 2"),**

37.     Plaintiff 2 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to him as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

38.     Plaintiff 2 experienced discrimination because he was Latino during the course of his employment as described in paragraph 6 above.

39.     During Plaintiff 2's employ at Sun Foods I, he was routinely insulted by both Leng Ku and Che Ku and called "stupid" and a "mother fucker" while on the job until the day he

left the employment. Plaintiff observed similar insulting by Leng Ku and Che Ku to other Latino employees but did not witness any such insults of non-Latino employees.

40.     During Plaintiff's employ at Sun Foods I, he was frequently assaulted by a manager "Chris Ku" who would squeeze his shoulder and press so hard it would force him to his knee due to the pain. The same manager would grab and squeeze Plaintiff 2's crotch and would laugh about it. These assaults continued until shortly before Plaintiff left his employ in the summer of 2016.  Plaintiff 2 observed this manager acting similarly toward other Latino employees but observed no similar assaults on non-Latino employees.

41.     During Plaintiff's employ at Sun Foods I until sometime in 2013, Plaintiff was periodically made to wade up to his waist in a dirty pond behind the store and remove trash along with other Latino employees with no waders or other protective gear. The pond was filthy and would contain items such as syringes and used condoms. On one occasion Plaintiff 2 experienced a rash from the water and observed other persons experiencing more severe rashes from being in the water. After he completed this task, Plaintiff 2 was made to return to work without being allowed an opportunity to shower or change his clothes. Plaintiff 2 never observed any non-Latino employees who had to clean out the lake behind the store during his time of employment though he continued to observe other Latino workers cleaning the pond until he left Sun Foods I.

42.     During his employ at Sun Foods I, Plaintiff 2 was frequently forced to remove spoiled food from the garbage so that the spoiled food could be used in the store's hot foods area or at a different store owned by Che Ku or Leng Ku. Plaintiff 2 was not given any protective gear for this task though there were often sharp objects in the trash can. Plaintiff 2 was made to perform this duty until shortly before leaving his employ at Sun Foods I. Plaintiff observed other

15

Latino employees being forced to perform this task but observed no non-Latino employees being asked to do the same thing.

43.     During his employ at Sun Foods I, Plaintiff 2 was occasionally locked into an extremely cold freezer for extended periods of time. Plaintiff was given no protective clothing to wear in this environment and suffered extreme discomfort and emotional distress from these lock-ins. Plaintiff 2 observed other Latino employees similarly being locked into the freezer during his employ at Sun Foods I but never observed any non-Latino employees being locked into the freezers.

44.     During his employ at Sun Foods I, Plaintiff 2 was occasionally locked into a store owned by Che Ku or Leng Ku for several hours or even overnight in order to complete work. Being locked in caused Plaintiff 2 extreme anxiety as he feared what would happen in an emergency if he could not escape the store.  Plaintiff 2 never witnessed any non-Latino workers being locked in to any of the Defendants' stores.

45.     On Christmas of 2012 or 2013, Plaintiff 2 was locked in the store with several other Latino workers by Che Ku. Someone suggested to Che Ku that he should do something nice for the employees as they had worked very long hours for Christmas and earned him a lot of money. Che Ku then proceeded to announce that he had "gifts" for the employees. Plaintiff 2 at first took Che at his word and was excited. However, Che then walked over to the Latino employees who were locked in and proceeded to pelt them with bananas saying something to the effect of: "here's your gift" "you are monkeys," "this is what you eat."  During his employ, Plaintiff 2 did not observe any non-Latino employees being referred to derogatorily as "monkeys," or having bananas thrown at them.

46.     During his employ at Sun Foods I Plaintiff 2 was repeatedly made to accompany injured Latino workers to the doctor when they suffered a workplace accident and ensure that they lied to the medical provider and indicated that the injury occurred at home. Plaintiff 2 never observed any non-Latino workers being forced to accompany injured workers to the doctor in order to lie, he similarly did not observe any non-Latino workers being instructed to lie to their medical provider about where they were injured.

47.     During his employ at Sun Foods I sometime in 2013, Plaintiff 2 was forced by Bao, the general manager of the store, to send $12,000 to Cambodia for reasons that were unknown to Plaintiff 2. When Plaintiff stated he did not want to transfer the money he was threatened. Plaintiff did not ever observe any non-Latinos being asked to transfer money in this manner during his employment but was aware of other Latino employees being forced to transfer money under duress.

48.     Throughout the course of his employment, Plaintiff 2 was routinely denied overtime pay for overtime hours worked. Plaintiff 2 was also routinely not paid for all the hours he had worked, and was pushed back into work after he clocked out for breaks. Plaintiff 2 did not observe any non-Latino employees being treated in this manner.

49.     Throughout the entire scope of his employment with the Defendants, Plaintiff 2 was repeatedly threatened by his employer if he failed to cooperate with any of their demands. Due to these threats, it took Plaintiff 2 many years to finally leave his employ at Sun Foods I despite the horrible work conditions.  Plaintiff 2 observed other Latino workers being threatened by Defendants but did not observe any non-Latino workers being threatened in this manner.

50.     As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 2 has suffered severe emotional distress and substantial damages.

**Nestor Carrera Osorio ("Plaintiff 3")**

51.     Plaintiff 3 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to him as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

52.     Plaintiff 3 experienced discrimination throughout the course of his employment as described in paragraph 7.

53.     Plaintiff 3 was insulted frequently by both Che Ku and Leng Ku and the general manager of the store, Bao throughout his employ. He would be told "you are just fucking illegal" "you are garbage," "you are useless." Plaintiff 3 observed other Latinos being insulted in a similar manner however not witness non-Latino employees being insulted in this manner did.

54.     Plaintiff 3 was hired to work in the produce section of the store but was forced to do many other tasks including, working in other departments, cleaning the filthy lake behind the store, snow removal, and  landscaping at the owners home. Plaintiff 3 observed other Latinos being forced to do multiple tasks but never observed non-Latinos being asked to do the same.

55.     During Plaintiff 3's employ he was physically assaulted by both Che Ku and Leng Ku while he was doing his work. Both brothers would push him from behind and say "you are very slow, hurry up." Plaintiff 3 observed other Latino employees being assaulted in a similar manner but did not observe assaults on non-Latino employees.

56.     On one occasion in 2014, Plaintiff 3 was injured when a nail penetrated his foot while he was being forced to press down the garbage in the store dumpsters with his feet (a task he did routinely). After he was injured, the Plaintiff did not bother to report it because he knew that his employer would be mad and would force him to continue working. Plaintiff 3 did not

observe any non-Latino workers being injured or being forced to press down the garbage with their feet.

57.     Plaintiff 3 was locked in the extremely cold industrial strength freezer at Sun Foods I  a couple times a year by Che Ku throughout his employ for as long as an hour at a time. This experience was extremely uncomfortable and caused Plaintiff 3 extreme distress. Plaintiff 3 knew of other Latino employees who were locked in the freezer in a similar manner but never heard of any non-Latino employees being locked into the freezer.

58.     Plaintiff 3 consistently did not receive overtime pay during his employ at Sun Foods I and also consistently did not receive full compensation for all hours worked. Plaintiff 3 knew this to be the case for other Latino employees but never heard of any non-Latino employees being denied overtime or compensation during their employ with Sun Foods I.

59.     As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 3 has suffered severe emotional distress and substantial damages.

**Serfi Elezar Morales Lima ("Plaintiff 4")**

60.     Plaintiff 4 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to him as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

61.     Throughout the course of his employment as described in paragraph 8, Plaintiff 4 was frequently subjected to insults by Che Ku, Leng Ku, and other agents of the Defendant companies.  Plaintiff 4 observed other Latino workers being insulted in a similar manner but did not observe non-Latino workers being insulted.

62.     Throughout the course of his employment described in paragraph 8, Plaintiff 4 was not compensated for overtime hours he worked, though he routinely worked sixty hours a

week. To avoid overtime pay, Plaintiff 4 would be forced to work at one store for thirty hours and then a different store owned by the family for an additional thirty hours. Additionally, Plaintiff 4 was consistently cheated out of hours he had worked. Plaintiff 4 observed other Latino employees being cheated out of overtime hours as well as regular hours worked but did not observe any similar mistreatment of non-Latino employees.

63.     Throughout the course of his employment, Plaintiff 4 was routinely threatened by his employer. He was told he would be reported to immigration and that he would be fired for failing to do whatever the owner or management told him to do. Plaintiff 4 observed similar threats directed at other Latino employees but  never observed non-Latino workers being threatened in this manner.

64.     During his employment in the sea food Department of Sun Foods, the Plaintiff was denied access to safety gear for cutting and cleaning fish. Plaintiff was injured many times while doing this. On one occasion, the Plaintiff was stabbed with a fish's fin and had to go to the hospital. The Plaintiff was made by his employers to lie about where he had incurred the injury. The Plaintiff was then made to go back to work the next day although his finger was badly swollen and still throbbing with pain. Plaintiff's non-Latino co-workers were never made to cut or clean fish without protective gear. Plaintiff 4 never observed his non-Latino co-workers being forced to work immediately after being injured or being forced to lie to their doctor about the nature of their injuries.

65.     After being injured several times in the Sea Food department, the Plaintiff was transferred to the freezer. Conditions in the freezer were dangerous and Plaintiff was also injured in the freezer when he fell on one occasion. Plaintiff told a manger, Han about the injury and was not given any treatment and was sent back to work. The owner was very angry about the injury.

Plaintiff never witnessed any non-Latino co-workers being treated in a similar manner when they were injured.

66.     During his employ with the Defendants, Plaintiff 4 was assaulted by the owner,. Who grabbed him by the shoulder and shoved him aside. Plaintiff witnessed other similar assaults against Latino employees but never observed similar assaults being exacted against non-Latino employees.

67.     Throughout the course of his employment, Plaintiff 4 was periodically locked in the store freezer without protective gear. The Plaintiff and other Latino co-workers complained to Che Ku and were told that , it didn't matter if they were locked in the freezer for days as long as they finished their jobs. Plaintiff 4 never witnessed any non-Latino co-workers being locked in the freezer.

68.     During Plaintiff's employ, in 2015, the Department of Labor came to Sun Foods I and the Plaintiff was told to leave the store right away. He was also told that if he spoke to the Department of Labor about work conditions he would be fired. Plaintiff 4 observed other Latino employees being told to leave the store and not talk to the department of labor, he did not observe any non- Latinos being asked to do the same.

69.     As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 4 has suffered severe emotional distress and substantial damages.

**Octavio Gallardo Gutierrez ("Plaintiff 5")**

70.     Plaintiff 5 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to him as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

71.     Throughout the course of his employment, as described in Paragraph 9, Plaintiff 5 was subject to frequent insults by Che Ku, Leng Ku and other agents of the Defendant companies, including being told he was "useless," that "Mexican people are assholes," and "Mexican people are stupid." which continued until he left his job. Plaintiff 5 observed other Latinos being insulted in a similar manner however not witness non-Latino employees being insulted did.

72.     While Plaintiff 5 was employed by Dragon Star as a stocker in 2012, the owner Che Ku, forced him to go to Che's own home to do construction work on the premises. Over the course of a year, Plaintiff helped cut down trees on the property and helped build an artificial lake in the backyard. During this period, Plaintiff 5 received checks from Star Ocean and Dragon Star. He created an artificial lake behind the home and removed trees. Plaintiff 5 worked with several other Latino workers at Che Ku's home and never observed any other non-Latino workers being made to work at Che Ku's personal home. Plaintiff was also assigned to paint several of the stores owned by Che Ku and Leng Ku including Dragon Star, Ocean Star, Sun Foods I& II and Star Ocean. Plaintiff never observed any non-Latino workers being assigned to paint the other stores

73.     During the course of the employment described in Paragraph 9, Plaintiff 5 was locked into his place of employment on several different occasions. In 2014, the Plaintiff was locked into Sun Foods I freezer for approximately 4 or 5 hours by Che Ku who placed a pallet in front of the door to prevent him from escaping. Plaintiff was extremely uncomfortable and suffered extreme distress upon being locked into the freezer. After Plaintiff 5 was released from the freezer he had a sore throat for several days. Plaintiff observed other Latino employees being

locked into stores as well as the freezer but never observed any similar lock-ins of non-Latino employees.

74.     During the course of his employment, Plaintiff 5 was assaulted on many occasions by Che Ku while performing his work duties. Che Ku frequently slapped Plaintiff 5 on the back of the head and nudged him with his arm. Plaintiff 5 observed other Latino employees being assaulted in a similar manner but never observed similar assaults on non-Latino employees.

75.     During the course of employment, Plaintiff 5 was repeatedly not paid for part of the hours worked. Moreover, the Plaintiff 5 did not receive overtime pay for overtime hours. Plaintiff 5 observed that other Latino co-workers had similar issues but did not observe any non-Latino workers whose hours were uncompensated or who had overtime payments withheld.

76.     As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 5 has suffered severe emotional distress and substantial damages.

**Susana Garcia Gonzales ("Plaintiff 6")**

77.     Plaintiff 6 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to her as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

78.     Throughout the course of her employment described in Paragraph 10, Plaintiff 6 was subject to frequent insults from her employers. Plaintiff 6 was told by Che Ku as well as other company employees, that she was "worthless" and "useless" and also that she didn't have a brain. Additionally, when the garbage needed to be pressed down in the dumpster, Plaintiff 6 was also told by Che Ku that she should do it because she was fat and needed to lose some weight and get some exercise. Plaintiff was also told by Che Ku that "nothing good comes from

23

Mexico" and that this is why Mexio never "progressed." Plaintiff 6 witnessed similar insults being directed at other Latino employees but never observed similar insults directed at non-Latino employees during her employment.

79.     During her employment with Defendant, the Plaintiff was repeatedly smacked on the head by Che Ku and his family members while she was working. Plaintiff was humiliated by these assaults. Plaintiff observed similar assaults on other Latino workers but never observed any such assaults perpetrated against non-Latino workers.

80.     The Plaintiff was seriously injured on the job on two occasions during her employment with Sun Foods I in 2007 and in 2012 and was mistreated following the injuries. As a direct result of both injuries, the Plaintiff lost her unborn baby. In 2007, the Plaintiff was made to carry very heavy boxes during her pregnancy despite asking the Defendant for an accommodation. As a result of this heavy lifting the Plaintiff miscarried. In 2012, Plaintiff 6 was struck by a pack of banana boxes which fell on her from above while she was working. After the accident, the Plaintiff 6 who was pregnant at the time began bleeding. The Defendant instructed the Plaintiff 6 to get back to work. Plaintiff 6 eventually went to the hospital for her injuries but was told by her supervisor that if she told hospital workers she had been injured at work, immigration would be called and she would be deported. As such, the Plaintiff 6 lied to hospital employees about where her injuries had occurred out of fear.  Plaintiff 6 was also told not to make a workers compensation claim or she would be deported. Plaintiff 6 observed other Latinos being forced to work and pressured to lie about workplace injuries but observed no similar actions taken against non-Latino co-workers.

81.     As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 6 has suffered severe emotional distress and substantial damages.

**Manuel Gutierrez Carrera ("Plaintiff 7")**

82.    Plaintiff 7 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to him as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

83.    Throughout the course of Plaintiff 7's employment as described in paragraph 11, Plaintiff was routinely not paid for hours he worked.  Plaintiff 7 was also routinely denied pay for overtime hours that he worked. Plaintiff 7 observed that other Latino employees had similar issues with their pay but never observed any non-Latino employees being denied compensation for time worked.

84.    Throughout the course of Plaintiff 7's employment as described in paragraph 11, Plaintiff 7 was routinely insulted by his employer while working, particularly by Che Ku and a general manager named Bona. Plaintiff 7 along with other Latino co-workers were called "monkeys" and told they were "like animals." Plaintiff 7 never observed any non-Latino co-workers being insulted in this manner.

85.    While employed as described in paragraph 11, Plaintiff 7 was occasionally locked into the Defendant's stores against his will.  In 2013, the Plaintiff was locked into Sun Foods II until two or three o'clock in the morning. Plaintiff was very disturbed by being locked into the building because he knew he could not escape in case of medical emergency or fire. Plaintiff 7 observed other Latinos being locked into the Defendants' stores in a similar manner. Plaintiff 7 never observed non-Latino co-workers being locked into any of the Defendant's stores.

86.    During the course of his employment Plaintiff 7 was forced by Che Ku to transfer sums of money to Cambodia against his will on four or five different occasions. Plaintiff did not know what the money transfers were for and was concerned about them. Plaintiff 7 observed that

other Latinos were asked to make similar money transfers by Defendants but never observed any non-Latino workers being forced to make money transfers.

87.     During the course of his employment, Plaintiff 7 was injured twice on the job and never received worker's compensation for his injuries because he was never informed by his employer that he could make a claim. Additionally, after slicing his finger in half during a door installation, Plaintiff 7 was forced to keep working though he needed medical attention.

88.     During the course of his employment, Plaintiff 7 was routinely slapped on the back and also the butt by Che Ku while he was working. Plaintiff 7 also observed Che Ku touching Latino women in a sexually inappropriate manner. Plaintiff also observed Che Ku assaulting other Latino males on the job. Plaintiff 7 never saw Che Ku or other Defendants assault non-Latino employees while they were working.

89.     As a direct result of working for Che Ku, Plaintiff 7 suffers from anxiety, nightmares, and interrupted sleep.

90.     As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 7 has suffered severe emotional distress and substantial damages.

**Rigoberta Olivar Roldan ("Plaintiff 8")**

91.     Plaintiff 8 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to her as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

92.     Throughout the course of her employment as described in Paragraph 12, Plaintiff 8 was subject to frequent insults from Che Ku, Leng Ku, and Leng Ku's wife as well as other agents of Sun Foods I and Dragon Star. The Plaintiff was told she was "stupid" and "useless" and that she did not walk fast enough because she was "fat." Plaintiff was also called a

26

"monkey" along with other Latino employees at her workplace. Plaintiff never observed any of the non-Latino employees of Defendants being insulted in a similar manner

93.    Throughout the course of her employment as described in paragraph 11, Plaintiff 8 was routinely assaulted by her employers. Often when Plaintiff 8, was attempting to leave work she would be grabbed and pushed back into work . Additionally, on many occasions Leng Ku threw boxes from a platform at Plaintiff 8 without checking to see if she was ready to catch it. On many occasions Plaintiff was struck by the box and experienced significant pain. Plaintiff 8 observed other Latino employees being assaulted in a similar manner but never observed non-Latino employees being assaulted by their employers.

94.    Throughout the course of her employment with Defendants Plaintiff 8 was locked in to the Defendant stores against her will on a number of occasions, especially holidays because it was a busy time for the store. Plaintiff specifically recalls being locked into the store by Che Ku Christmas of 2013. Plaintiff observed other Latino employees being forced to stay at work against their will but never observed similar lock-ins of non-Latino employees.

95.    Throughout the course of her employment with Defendants, Plaintiff 8 was routinely denied overtime pay for overtime hours worked and was not compensated at all for other hours that she worked. Additionally, Plaintiff was routinely made to work through unpaid breaks. Plaintiff 8 observed other Latino employees being treated in a similar manner but never was aware of any non-Latino employees who were treated similarly.

96.    Throughout the course of her 9 years of employment with Defendants Plaintiff 8 noticed that she was not receiving raises at a rate commiserate with other non-Latino employees at the store though she was working harder than they were. Plaintiff confronted Che Ku about this discrepancy in 2016 and he refused to give her a raise saying she had to "show more effort."

27

After confronting Che Ku about the pay discrepancy at work, he treated Plaintiff 8 worse than before.

97.    Throughout the course of her employment, Plaintiff 8 was routinely made to pack down the trash in the Sun Foods Store by crawling in the dumpster and stomping on the trash with her feet.  Plaintiff 8 observed many Latino employees being forced to do the same but never observed any non-Latino employee being paid to compact the garbage with their feet.

98.    During her employ with Defendants, Plaintiff 8 was injured at work due to dangerous work conditions and was treated poorly upon being injured. On two occasions, the Plaintiff 8 was injured while being forced to compress the garbage with her feet. On one occasion a nail went into Plaintiff 8's food, on a different occasion broken glass went into the Plaintiff's foot.  Upon reporting the injuries, Plaintiff 8 was made to go back to work immediately, and never went to a doctor about the injuries at the insistence of her employers. On a different occasion, in December of 2013 or 2014, the Plaintiff was overworked and was not allowed to take a lunch break. As a result, the Plaintiff had an anxiety attack, fainted, and had to be taken to the hospital in an ambulance.  The Plaintiff's employer refused to pay her medical bills and Plaintiff was not notified that she could file a workers compensation claim. Plaintiff still owes thousands of dollars in medical bills for the incident. Plaintiff observed other Latino employees being treated poorly when they were injured but never observed non-Latino employees being treated in a similar manner.

99.    Throughout the course of her employment, Plaintiff 8 was routinely threatened by her employers. On one occasion about two years ago, Plaintiff attempted to leave her job due to the poor work conditions but stayed because her employers threatened to have her deported if

she left. She has nightmares about work, has begun losing her hair from the stress, and has been told by her doctor that she needs to relax.

100.     As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 8 has suffered severe emotional distress and substantial damages.

### Arturo Munoz Flores ("Plaintiff 9")

101.     Plaintiff 9 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to him as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

102.     Throughout the course of his employment as described in paragraph 13, the Plaintiff was routinely insulted by his employers including Che Ku. Plaintiff was called "mother fucker," "stupid" and "asshole." Plaintiff 9 routinely observed other Latinos being insulted but never witnessed any non-Latino employees being subject to similar insults.

103.     Throughout the course of his employment, Plaintiff 9 was locked into several of the Defendants' stores against his will on multiple occasions. Plaintiff 9 specifically recalls being locked into Dragon Star on or about October of 2014 with several other Latino employees. On this occasion, Plaintiff 9 was locked into the store for eight hours past his normal shift and was forced to remain at the store from 8:00 a.m. to 5:00 a.m. The Plaintiff was extremely distressed by being locked into the store because he realized there would be no way to escape if someone had a heart attack or there was another emergency such as a fire. On several occasions, Plaintiff 9 observed Latino workers being locked in to the Defendant stores, however, he never witnessed any non-Latinos being locked in to Defendant stores.

104.     On several occasions in 2008 and 2009, Plaintiff 9, was forced to transfer money against his will to Cambodia by Che Ku and Bao (the manager at Sun Foods I) for unknown

29

reasons. Plaintiff 9 was aware of other Latino employees who had been forced to transfer money but never observed any non-Latino employees being forced to transfer money by the Defendants.

105.    Throughout the course of Plaintiff 9's employment, he was not paid overtime wages for overtime hours worked.  He was additionally not paid at all for many of the hours that he worked. Plaintiff 9 observed other Latinos not being fully paid by the Defendants but never observed any non-Latino employees with similar issues.

106.    As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 9 has suffered severe emotional distress and substantial damages.

**Araceli Orozco Calvillo ("Plaintiff 10")**

107.    Plaintiff 10 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to her as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

108.    Throughout the course of Plaintiff 10's employment as described in Paragraph 14, Plaintiff was routinely insulted by her employers. She was called "garbage" and "useless." Plaintiff 10 routinely observed other Latino employees being insulted in a similar manner but never witnessed any non-Latino co-workers being insulted by their employers.

109.    Throughout the course of Plaintiff 10's employment, she was not paid for overtime hours that she worked, moreover she was routinely not paid for several of the hours that she did work.  Plaintiff 10 observed other Latino employees being underpaid in a similar manner, but did not observe any non-Latino employees being underpaid.

110.    Throughout the course of Plaintiff 10's employment she noticed that she and the other Latino employees had to work much harder than the non-Latinos for less money. Plaintiff 10 confronted Leng Ku about this issue and he said "you are not the same."

111.    Throughout the course of Plaintiff 10's employment she was sexually harassed by her employers. On one occasion in 2012 Che Ku assigned Plaintiff 10 to clean a fish cooler. While Plaintiff 10 was bent over washing the cooler he came from behind her and rubbed his groin against her. Che Ku would also routinely make comments about how Araceli did not have a "man" and that he would have to find her a man because she shouldn't be alone. Additionally, throughout the course of her employment, Leng Ku approached Plaintiff 10 almost daily and made her give him full body massages in his underwear. Plaintiff did not want to do this task as she had been hired to work in the produce department and it made her very uncomfortable. Plaintiff used to hide to try and avoid giving these massages. Plaintiff 10 did not witness any non-Latino employees being sexually harassed by Che Ku, Leng Ku or other agents of the Defendants in a similar manner.

112.    During the course of her employment, Plaintiff 10 was locked-in to both Double Dragon and Sun Foods I. Being locked in to the stores caused Plaintiff 10 extreme emotional distress. Plaintiff 10 witnessed other Latino employees of Sun Foods being locked into their workplace but did not witness any non-Latino employees being locked into their place of employment.

113.    As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 10 has suffered severe emotional distress and substantial damages.

**Alfonso Renteria Ortega ("Plaintiff 11")**

114.    Plaintiff 11 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to him as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

115.   Throughout the course of Plaintiff 11's employment as described in Paragraph 15, Plaintiff 11 was insulted by Che Ku and Leng Ku. Due to his limited understanding of English, Plaintiff 11 often did not understand what Che Ku or Leng Ku were saying but he could tell they were angry because of their tone. Plaintiff 11 did his best to avoid the employers while they were yelling but recalls being called a "monkey." Plaintiff 11 observed other Latino workers being insulted in a similar manner but did not witness any of the non-Latino employees being insulted by Defendants.

116.   Throughout the course of Plaintiff 11's employment as described in Paragraph 15, Plaintiff was persistently not paid for hours he worked. Plaintiff 11 always kept independent records of his hours work and observed that each paycheck would be short approximately three hours. Plaintiff 11 was also persistently denied overtime pay for overtime work. Plaintiff 11 was aware of other Latino workers that had similar issues with payment but did not observe any non-Latinos having similar problems.

117.   Plaintiff 11 was locked in to Defendant stores on multiple occasions throughout the course of his employment. Plaintiff witnessed other Latino workers being locked in but never witnessed non-Latino workers being locked in to their place of employment.

118.   During Plaintiff 11's employment with the Defendants he was injured at work due to dangerous work conditions and was treated poorly after he was injured. On one occasion, Plaintiff 11's hand was injured when it got caught in some machinery. Plaintiff was forced by Che Ku to lie about where he had injured himself when he went to the doctor's office.  Plaintiff 11's doctor informed him that he should not work the next day but Plaintiff 11 was forced to work the day after his injury. Plaintiff did not file a worker's compensation claim as he didn't know that he could. Plaintiff 11 observed other Latinos being forced to lie about their workplace

injuries and did not witness any non-Latino co-workers being forced to lie about where their injuries occurred.

119.    During Plaintiff 11's employment he was forced to send money to Cambodia by Leng Ku's wife on one occasion. Plaintiff did not know why he had to send this money and he did not want to send it. Plaintiff was told that if he did not transfer the money he would be fired. Plaintiff 1 observed other Latino employees were asked to transfer money but did not observe any non-Latino employees being asked to transfer money for the Defendants.

120.    Periodically, Plaintiff 11, along with other Latino workers was forced to clean out a lake behind Sun Foods I and cut all the plants in the water. When Plaintiff 11 was forced to clean the lake he was not given any protective equipment. Moreover, when Plaintiff 11 completed cleaning the lake he was forced to return to work without changing clothes. Plaintiff 11 did not observe any non-Latino co-workers being forced to clean the lake.

121.    Periodically, Plaintiff 11 was forced to press down the garbage with his feet by climbing in the dumpster. Plaintiff observed other Latino workers being forced to press down the garbage with their feet but never observed any non-Latino workers completing this task.

122.    As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 11 has suffered severe emotional distress and substantial damages.

**Isael Romero Bruno (Plaintiff 12")**

123.    Plaintiff 12 incorporates the allegations in paragraph 25 to 28 as though set forth expressly below and also adds the following facts specific to him as evidence of the Defendants' disparate treatment of Latino employees and violations of international law.

124.    Throughout the course of his employment described in paragraph16, Plaintiff 12 was repeatedly insulted at work by Leng Ku and Che Ku and other agents of the Defendants.

Plaintiff 12 was called "worthless," "useless," and "garbage." Plaintiff 12 observed other Latino employees being insulted in a similar manner but didn't ever observe any non-Latino co-workers being insulted in a similar manner.

125.     Throughout the course of his employment, Plaintiff 12 was periodically locked into a freezer  by Defendants for one or two hours at a time without any sort of protective equipment. Plaintiff observed other Latino employees being locked into the freezer but did not observe any non-Latino employees being locked into the freezer.

126.     Throughout the course of Plaintiff 12's employment, he was occasionally locked into Defendant's stores against his will. Che locked the Plaintiff into Dragon Star along with other Latinos. Plaintiff 12 was told by Che that if he tried to get out an alarm would sound and the police would come and arrest them. Plaintiff observed other Latino employees being locked into the Defendant stores but did not observe any non-Latino employees being locked into any of the Defendants' stores.

127.     During the course of his employment, Plaintiff 12 was injured due to dangerous work conditions and was treated poorly following his workplace injury. While Plaintiff was pressing down garbage with his feet in the dumpster, he got a nail in his foot. Plaintiff was originally told to keep working but soon it became clear he needed to go to the hospital.  Leng Ku sent a manager with Plaintiff 12 to the hospital to ensure that Isael did not tell the hospital personnel that he was injured at work. Plaintiff 12 was told by his treating physician that he needed to come back for a follow up. Plaintiff 12 was told by Leng Ku that he could not go back to the doctor because the bills would be expensive and they would have to be deducted from Plaintiff 12's paycheck. Plaintiff complied with Leng Ku's demands and didn't return to the

doctor because he was afraid of him. Plaintiff 12 never witnessed any non-Latino co-workers being injured and forced to lie about their injuries by the Defendants.

128.    As a direct and proximate result of the above referenced allegations against the Defendants, Plaintiff 12 has suffered severe emotional distress and substantial damages.

## COUNT I:
## VIOLATION OF 42 U.S.C. § 1981
## (ON BEHALF OF ALL PLAINTIFFS)

129.    Plaintiff incorporates the allegations contained in Paragraphs 1 through 128 inclusive, as though fully set forth herein.

130.     Defendants combined to intentionally discriminate against all named Plaintiffs who are of Latino origin in violation of the rights of each and every named Plaintiff afforded them by the Civil Rights Act of 1866, 42 U.S.C. sections 1981, as amended by the Civil Rights Act of 1991.

131.    By the conduct described above, Defendants  intentionally deprived the above-named Latinos of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. §1981.

132.    As a result of the Defendants  discrimination in violation of Section 1981, the Latino plaintiffs have been denied employment opportunities providing substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling them to compensatory damages.

133.     In their discriminatory actions as alleged above, Defendants have acted with malice or reckless indifference to the rights of the above-named Latino plaintiffs, thereby entitling them to an award of punitive damages.

134.     To remedy the violations of the rights of plaintiffs and the class secured by Section 1981, plaintiffs request that the Court award them the relief prayed for below.

## COUNT II:
## ALIEN TORT STATUTE (28 U.S.C. § 1350)

135.     Plaintiffs incorporates the allegations contained in Paragraphs 1 through 128 inclusive, as though set forth fully herein.

136.     By the conduct described above, including threats of deportation and other harm, physically restraining the Plaintiffs from leaving their workplace, and persistently forcing the Plaintiffs to work for free ,Defendants' treatment of Plaintiffs constituted forced labor in violation of customary well-established and universally recognized international law including the International Labour Organization Convention No. 29 Concerning Forced or Compulsory Labour as the work and service performed by plaintiffs was under the menace of penalty and was not offered freely by the Plaintiffs. Moreover the actions of Defendants constituted a severe violation of human rights and restriction of human freedom which rise to the level of forced labor.

137.     As a result of the forced labor imposed by Defendants, the Plaintiffs were denied employment opportunities providing substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling them to compensatory damages.

138.    To remedy the violations of the rights of Plaintiffs secured by 28 U.S.C. § 1350, plaintiffs request that the Court award them the relief prayed for below.

## COUNT III:
## THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT

**139.**    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 128 inclusive, as though set forth fully herein.

140.    By the conduct described above, the Defendants' treatment of Plaintiffs constituted forced labor in violation of 18 U.S.C. § 1589 and amounted to a violation of the TVPRA because they knowingly obtained the labor or services of Plaintiffs by means of force, threats of force, physical restraint, or threats of physical retraint as well as by means of abuse or threatened abuse of law or legal process.

141.    By virtue of the conduct described above, the Defendants knowingly benefitted financially from their participation in this venture which they knew or should have known was in violation of   of 18 U.S.C. § 1589.

142.    As a result of the conduct of the Defendants, the Plaintiffs have suffered actual damages as well as emotional harm thereby entitling them to compensatory damages and attorney's fees pursuant to 18 U.S.C. §  1595.

## COUNT IV:
## THE RACKATEER INFLUENCED AND CORRUPT ORGANIZATIONS STATUTE

143.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 128 inclusive, as though set forth fully herein.

144.    The Defendants engaged in a pattern of conduct of racketeering activity during the ten years  immediately preceding the filing of this amended complaint in violation of 18 U.S.C. § 1964. These activities included forced labor on more than two separate occasion in the past ten years in violation of 18 U.S.C. § 1589 because they knowingly obtained the labor or

services of Plaintiffs by means of force, threats of force, physical restraint, or threats of physical

retraint as well as by means of abuse or threatened abuse of law or legal process.

145.     The Defendants additionally engaged in a pattern of conduct of racketeering

activity during the ten years preceding this amended complaint by engaging in witness tampering

in Official Labor Department investigations on more than two occasions in violation of 18

U.S.C. § 1512(d)(1).

146,     Plaintiffs also have reason believe that the Defendants engaged in other patterns

of illegal activity covered by of 18 U.S.C. § 1961 during the course of their employ.

147.     As a result of the Defendants conduct in violation of 18 U.S.C. § 1964, the

Plaintiffs suffered actual damages as well as emotional harm thereby entitling them to treble

compensatory damages, punitive damages and  attorney's fees pursuant to 18 U.S.C. §  1964.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims and issues for which Plaintiffs have

a right to trial by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, each of them, jointly and

severally, and requests relief from this Court as follows:

a.  A declaratory judgment against all Defendants finding that the named Defendants violated the named Plaintiffs' rights in violation of 42 U.S.C. § 1981,  28 U.S.C. § 1350, 18 U.S.C. §§ 1589 and 1595, and18 U.S.C.A § 1964(c),

b.  A permanent injunction pursuant to 42 U.S.C. § 1981  enjoining the Defendants, and officers, agents, employees, and all others acting for or succeeding Defendants from engaging in discriminatory practices alleged in this complaint.

c.  Awarding monetary damages sufficient to compensate each Plaintiff individually for damages, including but not limited to compensatory,treble, and punitive damages;

d.  Awarding Plaintiffs all applicable pre-judgment and post-judgment interest;

e.  Awarding Plaintiffs attorney's fees and costs;

f.  Awarding any other just and equitable relief that the Court deems appropriate.

Respectfully Submitted,

Date:  01/30/2017                    By__/s/ Phillip Fishman_____ _____
                                    Phillip Fishman, Esq. (License #29622)
                                    Phillip Fishman Law Office
                                    10 S. 5th St. Ste. 1005
                                    Minneapolis, MN 55407
                                    612-726-0276
                                    phil@pfflegal.com

Date:   01/30/2017                   _/s/ Rachel Petersen_____
                                    Rachel Petersen (License #0391476)
                                    Rachel Petersen Law Office
                                    10 S. 5th St. Ste. 1005
                                    Minneapolis, MN 55407
                                    612-729-2009
                                    rachel@pfflegal.com